**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) JACOB GOLDMAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>(1) SPIRIT AEROSYSTEMS HOLDINGS, INC.,<br>(2) THOMAS C. GENTILE III,<br>(3) JOSE GARCIA, and<br>(4) JOHN GILSON,<br><br>Defendants. | Civil Action No:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacob Goldman ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Spirit AeroSystems Holdings, Inc. ("Spirit" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.  This is a class action on behalf of all persons or entities who purchased or otherwise acquired publicly traded Spirit securities from October 31, 2019 through January 29, 2020,

inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has operations in this judicial district and alleged misstatements and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased Spirit securities during the Class Period and was economically damaged thereby.

7. Defendant Spirit purports to design, manufacture, and supply commercial aero structures in the United States and internationally. Spirit is a Delaware corporation located at 3330

N. Mingo Rd., Tulsa, Oklahoma 74116. Spirit securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "SPR."

8. Defendant Thomas C. Gentile III ("Gentile") has been the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9. Defendant Jose Garcia ("Garcia) served as the Company's Chief Financial Officer ("CFO") from January 9, 2019 until January 29, 2020.

10. Defendant John Gilson ("Gilson") served as the Company's Vice President of Finance and Controller from January 8, 2018 until January 29, 2020.

11. Defendants Gentile, Garcia, and Gilson are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

    a. directly participated in the management of the Company;

    b. was directly involved in the day-to-day operations of the Company at the highest levels;

    c. was privy to confidential proprietary information concerning the Company and its business and operations;

    d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    g. approved or ratified these statements in violation of the federal securities laws.

13. Spirit is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Spirit under *respondeat superior* and agency principles.

15. Defendant Spirit and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

16. On October 31, 2019, Spirit filed a Form 10-Q with the SEC, which provided its financial results and position for the fiscal quarter ended September 26, 2019 (the "3Q 2019 10-Q"). The 3Q 2019 10-Q was signed by Defendants Gilson and Garcia. The 3Q 2019 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gentile and Garcia attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17. The 3Q 2019 10-Q stated that the Company's internal controls over financial reporting were effective:

> Our President and Chief Executive Officer and Senior Vice President and Chief Financial Officer have evaluated the effectiveness of our disclosure controls and procedures as of September 26, 2019 and have concluded that these disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934) are effective to provide reasonable assurance that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934, as amended, is recorded, processed, summarized and reported within the time period specified in the SEC rules and forms. These disclosure controls and procedures include, without limitation,

controls and procedures designed to provide reasonable assurance that information required to be disclosed by us in the reports we file or submit is accumulated and communicated to management of the Company, including our principal executive and principal financial officers, as appropriate to allow timely decisions regarding required disclosure.

18. The statements referenced in Paragraphs 16-17 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked effective internal controls over financial reporting; (2) the Company did not comply with its established accounting principles related to potential contingent liabilities; and (3) as a result, Defendants' statements about Spirit's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Begins to Emerge

19. On January 30, 2020, before the market opened, the Company issued a press release announcing that Spirit had determined that it did not comply with its accounting procedures and that Defendants Garcia and Gilson had resigned. The press release stated, in relevant part:

> Spirit AeroSystems [NYSE: SPR] today announced the appointment of Mark Suchinski as Senior Vice President and Chief Financial Officer and Damon Ward as Interim Controller and Principal Accounting Officer, effective January 29, 2020. These appointments follow the resignations of Jose Garcia, Senior Vice President and Chief Financial Officer, and John Gilson, Vice President, Controller and Principal Accounting Officer.
>
> "We are pleased to have Mark stepping into the CFO role," said Spirit AeroSystems President and CEO Tom Gentile. "Mark is a long-tenured and respected leader at Spirit, particularly within the finance team where he held a variety of key roles from 2006 to 2018, including serving as Controller and Principal Accounting Officer from 2014 to 2018. He brings a comprehensive understanding of our business and has strong relationships with both internal and external stakeholders. Mark is

5

supported by Spirit's talented finance organization and is committed to our future success."

*In December 2019, Spirit received information through its established compliance processes that led Spirit to commence a review of its accounting process compliance. As a result of the review, which is ongoing, Spirit determined that it did not comply with its established accounting processes related to certain potential contingent liabilities that were received by Spirit after the end of third quarter 2019.* As of today, Spirit believes this non-compliance will not result in a restatement of Spirit's financial statements for the third quarter ended September 26, 2019 or materially impact the financial statements for the fiscal year ended December 31, 2019. However, the review is ongoing and no final conclusion has been made. *In light of these findings, Messrs. Garcia and Gilson tendered their resignations. Spirit has communicated about this matter with the Securities and Exchange Commission and anticipates fully cooperating with any inquiries the Commission may have.*

Spirit is taking steps to strengthen procedures relating to contingent liabilities of this type to ensure they are processed correctly in the future. Spirit expects to file its Form 10-K for the 2019 fiscal year by the Securities and Exchange Commission's deadline.

(Emphasis added.)

20. On this news, the Company's shares fell $2.56 per share or approximately 4% on unusually high volume to close at $65.08 per share on January 30, 2020, damaging investors.

21. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Spirit securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Spirit, members of the Individual Defendants' immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Spirit securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

24. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Spirit;

    c. whether the Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d. whether Defendants caused Spirit to issue false and misleading SEC filings during the Class Period;

e. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

f. whether the prices of Spirit securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

g. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

28. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a. Spirit shares met the requirements for listing, and were listed and actively traded NYSE, a highly efficient and automated market;

b. As a public issuer, Spirit filed periodic public reports with the SEC;

c. Spirit regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    d.    Spirit was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

29. Based upon the foregoing, the market for Spirit securities promptly digested current information regarding Spirit from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

30. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

33. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

      a.      employed devices, schemes and artifices to defraud;

      b.      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c.      engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Spirit securities during the Class Period.

35. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Spirit were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Spirit, their control over, and/or receipt and/or modification of Spirit's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Spirit, participated in the fraudulent scheme alleged herein.

36. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Spirit personnel to members of the investing public, including Plaintiff and the Class.

37. As a result of the foregoing, the market price of Spirit securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Spirit securities during the Class Period in purchasing Spirit securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

38. Had Plaintiff and the other members of the Class been aware that the market price of Spirit securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Spirit securities at the artificially inflated prices that they did, or at all.

39. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

40. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Spirit securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. During the Class Period, the Individual Defendants participated in the operation and management of Spirit, and conducted and participated, directly and indirectly, in the conduct of Spirit's business affairs. Because of their senior positions, they knew the adverse non-public information about Spirit's corporate governance and business prospects.

11

43. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Spirit's business practices, and to correct promptly any public statements issued by Spirit which had become materially false or misleading.

44. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Spirit disseminated in the marketplace during the Class Period concerning the Company's corporate governance and business prospects. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Spirit to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Spirit within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Spirit securities.

45. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Spirit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A. Declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B. Awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.  Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.  Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 10, 2020

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman (OBA # 2853)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

and

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (*Pro Hac Vice to be filed*)
Laurence M. Rosen, Esq. (*Pro Hac Vice to be filed*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

Counsel for Plaintiff