# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JACOB GOLDMAN, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>(1) SPIRIT AEROSYSTEMS HOLDINGS, INC.,<br>(2) THOMAS C. GENTILE III,<br>(3) JOSE GARCIA, and<br>(4) JOHN GILSON,<br><br>   Defendants. | Case No. 4:20-cv-00054-CVE-JFJ |
| (1) GARY SMITH, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>(1) SPIRIT AEROSYSTEMS HOLDINGS, INC.,<br>(2) THOMAS C. GENTILE III,<br>(3) JOSE GARCIA, and<br>(4) JOHN GILSON,<br><br>   Defendants. | Case No. 4:20-cv-00077-CVE-JFJ |

(1) EMPLOYEES' RETIREMENT SYSTEM OF
THE CITY OF PROVIDENCE, Individually
and on behalf of all others similarly situated,

Plaintiff,

v.

(1) SPIRIT AEROSYSTEMS HOLDINGS,
INC.,
(2) THOMAS C. GENTILE III,
(3) JOSE GARCIA, and
(4) JOHN GILSON,

Defendants.

Case No. 4:20-cv-00117-CVE-FHM

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF MEITAV DASH
PROVIDENT FUNDS AND PENSION LTD. FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

I.       THE ACTIONS SHOULD BE CONSOLIDATED ........................................................... 6

II.      MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF ............................................... 7

         A.       Meitav Has Satisfied The Procedural Requirements Of The PSLRA ................... 7

         B.       Meitav Is The "Most Adequate Plaintiff" ............................................................ 8

                  1.       Meitav's Motion Is Timely ....................................................................... 8

                  2.       Meitav Believes it Has the Largest Financial Interest in the Relief
                           Sought by the Class ................................................................................... 9

                  3.       Meitav Is a Sophisticated Institutional Investor That Satisfies the
                           Requirements of Rule 23 ........................................................................... 9

                           (i)       Meitav Satisfies the Typicality Requirement of Rule 23 .............. 10

                           (ii)      Meitav Satisfies the Adequacy Requirement of Rule 23 ............... 11

                  4.       Meitav Is Precisely the Type of Lead Plaintiff Envisioned by the
                           PSLRA ..................................................................................................... 12

III.     MEITAV'S SELECTION OF LEAD COUNSEL MERITS APPROVAL ...................... 13

CONCLUSION ....................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Cendant Corp. Litig.*,
    64 F.3d 201 (3d Cir. 2001).................................................................13

*Cooke v. Equal Energy Ltd.*,
    No. CIV-14-0047-C, 2014 WL 3819159 (W.D. Okla. May 8, 2014) ......................6

*Duane & Virginia Lanier Trust v. Sandridge Energy, Inc.*,
    No. Civ-15-634-M, 2016 WL 1056653 (W.D. Okla. Mar. 16, 2016) ..............10, 11

*Friedman v. Quest Energy Partners LP*,
    261 F.R.D. 607 (W.D. Okla. 2009)........................................................10

*Hom v. Vale, S.A.*,
    No. 1:15-CV-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..................1

*Lipetz v. Wachovia Corp.*,
    No. 08-Civ-6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008)..................12

*Lowinger v. Global Cash Access Holdings, Inc.*,
    No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) ................6

*Martin v. Atchison Casting Corp.*,
    200 F.R.D. 453 (D. Kan. 2001)............................................................13

*In re Orion Sec. Litig.*,
    No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) .................6, 7

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)......................................................13

*In re Sandridge Energy, Inc. Sec. Litig.*,
    No. Civ-12-1341-W, 2015 WL 3652522 (W.D. Okla. May 11, 2015) ..................8

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.*,
    281 F.R.D. 641 (W.D. Okla. 2012)...................................................10, 11

*In re Williams Sec. Litig.*,
    No. 02-cv-72-HM, 2002 WL 32153476 (N.D. Okla. July 8, 2002) .................10, 12

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................... *passim*

Fed. R. Civ. P. 42 .................................................................6, 7

15 U.S.C. § 78u-4 *et seq.* ......................................................................... *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
No. 04-cv-8141 (S.D.N.Y.) ....................................................................... 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
No. 08-md-1963 (S.D.N.Y.) ...................................................................... 14

*In re Schering-Plough Corp./ENHANCE Sec. Litig.,*
No. 08-cv-0397 (D.N.J.) ........................................................................... 14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................... 2, 3, 12, 13

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 .................................. 2

Proposed Lead Plaintiff Meitav Dash Provident Funds and Pension Ltd. ("Meitav") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) consolidating the above-captioned actions (the "Action"); (ii) appointing Meitav as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired publicly traded Spirit AeroSystems Holdings, Inc. ("Spirit" or the "Company") securities from October 31, 2019 through February 27, 2020, inclusive (the "Class Period")[1]; and (iii) approving Meitav's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Federman & Sherwood as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

Meitav respectfully submits that it should be appointed Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Spirit securities during the Class Period (the "Class"). The action alleges violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder against Defendants (as defined herein) (the "Action").

---

[1]    The first-filed actions captioned *Goldman v. Spirit AeroSystems Holdings, Inc.*, No. 20-cv-00054 (N.D. Okla.), and *Smith v. Spirit AeroSystems Holdings, Inc.*, No. 20-cv-00077 (N.D. Okla.), which were filed on February 10, 2020, and February 24, 2020, respectively, were both brought on behalf of all persons or entities who purchased or otherwise acquired publicly traded Spirit securities from October 31, 2019 through January 29, 2020. Following the filing of the *Goldman* and *Smith* Actions, the substantively related action captioned *Employees' Retirement System of the City of Providence v. Spirit AeroSystems*, No. 20-cv-00117 (N.D. Okla.), was filed on March 24, 2020, which expanded the Class Period to that which is listed above. Generally for the purposes of lead plaintiff appointment, the most expansive class period governs. *See Hom v. Vale, S.A.*, No. 1:15-CV-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (collecting cases). Meitav is therefore adopting this longer period for the purposes of its motion.
.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether the movant has made a *prima facie* showing that it is an otherwise typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Meitav satisfies these requirements. As set forth below, Meitav incurred losses of *$3,278,150.19* on its Class Period investments in Spirit securities as calculated on a last-in-first-out ("LIFO") basis.[2] In light of this significant loss, Meitav has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of federal securities laws—an interest believed to be greater than that of any other qualified movant. Meitav also readily satisfies the typicality and adequacy requirements of Rule 23 because its claims are typical of all other members of the Class, and Meitav will fairly and adequately represent the interests of the Class.

Furthermore, because Meitav is a sophisticated institutional investor and suffered significant losses on its Spirit securities, Meitav is well-suited to vigorously pursue this litigation as Lead Plaintiff. Indeed, the PSLRA's legislative history shows that a large, sophisticated institutional investor like Meitav is precisely the type of investor that Congress intended to empower to lead securities class action litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995),

---

[2]     A copy of Meitav's Certification, signed by Teddy Lin in his capacity as Chief Executive Officer of Metiav, is attached as Exhibit A to the Declaration of William B. Federman (the "Federman Decl."). This Certification sets forth all transactions of Meitav in Spirit securities during the Class Period. In addition, a table reflecting the calculation of financial losses sustained by Meitav on its investments in Spirit securities during the Class Period is attached as Exhibit B to the Federman Decl.

*reprinted in* 1995 U.S.C.C.A.N. 679, 685. In short, Meitav is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, Meitav respectfully requests that the Court approve its selection of Labaton Sucharow as Lead Counsel for the Class and Federman & Sherwood as Liaison Counsel to the Class. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors, and has the expertise and resources necessary to handle litigation of this scale.

Accordingly, Meitav respectfully requests that the Court appoint Meitav to serve as Lead Plaintiff for the Class, and approve its choice of Labaton Sucharow as Lead Counsel and Federman & Sherwood as Liaison Counsel for the Class.

## FACTUAL BACKGROUND

Spirit is one of the largest independent non-Original Equipment Manufacturer ("OEM") commercial aerostructures designers and manufacturers in the world. The Boeing Company ("Boeing") is the Company's largest and most important customer, accounting for approximately 80 percent of Spirit's revenues in 2018 and 2019. The majority of these revenues are dependent on Boeing's 737 MAX airliners, which alone represent 50 percent of Spirit's revenues. Throughout the Class Period, market concern regarding Spirit's financial stability mounted in light of the continued grounding of the 737 MAX planes. Defendants, however, assuaged concern by stating they were "continuing to produce at a rate of 52 aircraft per month," which would purportedly allow them to "burn off the excess inventory after Boeing transitions to [a] rate [of] 57" 737 MAX planes per month. Further, Defendants stated that they had "made good

progress" on "actions on cost control and working capital to mitigate the impact," "following the MAX grounding."

Moreover, Defendants were questioned directly by analysts regarding the impact on production rates should the 737 MAX be grounded for longer than currently expected, specifically referencing "excess inventory." Defendants first stated that despite the fact they were "producing at a higher rate than Boeing," that "[i]f Boeing goes down more," they would "work closely with Boeing to determine what the right production level is." Further in response, Defendants stated that the Company was "going to be at a rate of 52" MAX planes per month "for an extended period of time which will allow [the Company] to get more stable and allow [its] supply chain to get healthy."

Defendants' assurances, however, that 737 MAX production rates were "going to be at a rate of 52" per month "for an extend period of time," were hollow. Because Boeing had continued to produce 737 MAX aircraft post-grounding, it was sitting on a massive glut of unsold planes. Therefore, Defendants knew or recklessly disregarded that this inventory buildup was reasonably likely to cause Boeing to temporarily halt 737 MAX production, which in turn, would have a significant negative impact on the Company's future financial results.

Additionally during the Class Period, Defendants attested to the accuracy of Spirit's financial reporting and the effectiveness of the Company's internal controls.

On December 16, 2019, after the close of trading, Boeing announced that it was suspending all production of 737 MAX planes in 2020. Of the reasons given, Boeing stated that because it had continued production of the 737 MAX planes "[t]hroughout the grounding," that it had "approximately [737 MAX] 400 airplanes in storage," and had halted production to maintain "supply chain health." The impact of a 737 MAX production halt, which historically accounted for 50 percent of Spirit's revenues, was directly contrary to Defendants' recent positive

assurances regarding 737 MAX production levels.  This production halt, therefore, would have a substantial negative impact on Spirit's financial outlook for 2020.  On this news, the price of Spirit stock declined $3.10, or nearly 4 percent on the following two trading days, closing at $75.78 on December 18, 2019.

On January 10, 2020, during intraday trading, Spirit issued a press release announcing that due to Boeing's decision to suspend production of the 737 MAX planes, that it had terminated "approximately 2,800 employees at its Wichita, Kansas facility."  The press release additionally stated that due to Spirit's excess inventory and Boeing's hundreds of plans in storage, once 737 MAX production resumed "levels [would] be lower than previously expected." On this news, the price of Spirit stock declined $3.09, or over 4 percent, to close at $69.70 on January 10, 2020.

To make matters worse, on January 30, 2020, before the market opened, the Company issued a press release announcing that Spirit had determined it did not comply with its accounting procedures regarding its potential contingent liabilities.  As a result, Spirit additionally revealed that Defendants Jose Garcia ("Garcia"), Spirit's Chief Financial Officer ("CFO"), and Defendant John Gilson ("Gilson"), Spirit's Vice President of Finance and Controller, had resigned.  On this news, the Company's shares fell $2.56 per share or approximately 4 percent to close at $65.08 per share on January 30, 2020.

Finally, on February 28, 2020, the Company gave further insight into its previous announcement that it may have failed to account for certain potential contingent liabilities. On that date, Spirit announced that it had identified a material weakness in its internal controls over financial reporting, and as a result thereof, the Company "should have recorded an incremental contingent liability for the third quarter of 2019 of less than $8 million."

Also on February 28, 2020, Spirit held an earnings call with analysts and investors to discuss Spirit's 2019 financial results. On the call, Defendant Thomas C. Gentile III ("Gentile"), Spirit's CEO, revealed that 737 MAX production rates in 2020 would be over 66 percent lower than those in 2019, and would not normalize for the next several years. As a result, it was revealed by the Company's newly-appointed CFO that "2020 will be a difficult year" for Spirit. On this news, the price of Spirit stock declined $6.19 per share, or 10 percent on February 28, 2020, closing at a price of $52.84 per share.

Due to Defendants wrongful acts and omissions, and the precipitous decline in the market value of Spirit common units, Meitav and other Class members have suffered significant losses and damages.

## ARGUMENT

## I. THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *Cooke v. Equal Energy Ltd.*, No. CIV-14-0047-C, 2014 WL 3819159, at *1 (W.D. Okla. May 8, 2014) (Noting the PSLRA "requires the issue of consolidation be resolved before appointing a Lead Plaintiff").

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve a common question of law or fact." *Id.* (citation omitted). "'[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.'" *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (quoting *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). "[S]light differences in the facts alleged and legal

issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

The Actions are well-suited for consolidation. The complaint filed in each of the Actions alleges that Defendants violated the Exchange Act. Each action sets forth substantively similar allegations relating to similar parties, transactions, and events. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a). Accordingly, Meitav respectfully requests that the Court consolidate the Actions, and any other subsequently-filed action.

## II.      MEITAV SHOULD BE APPOINTED LEAD PLAINTIFF

Meitav respectfully submits that it should be appointed Lead Plaintiff because it timely filed the instant motion, believes it has the largest financial interest of any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### A.      Meitav Has Satisfied The Procedural Requirements Of The PSLRA

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21(D)(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)      that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the
> purported plaintiff class that the court determines to be most
> capable of adequately representing the interests of class members
> (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Sandridge Energy, Inc. Sec. Litig.*, No. Civ-12-1341-W, 2015 WL 3652522, at *3 (W.D. Okla. May 11, 2015) (describing PSLRA standards for appointment of lead plaintiff). This presumption may be rebutted only by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B. Meitav Is The "Most Adequate Plaintiff"

#### 1. Meitav's Motion Is Timely

Meitav has filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed Action published notice on *Business Wire*, a widely-circulated, national, business-oriented news wire service, on February 10, 2020, which identified April 10, 2020 as the deadline to file motions for appointment in the Action.

*See* Federman Decl., Ex. C.  Further, on March 24, 2020 notice was again published in connection with the *City of Providence* Action on *Globe Newswire*, a similarly widely-circulated, national, business-oriented news wire service,  advising of the slight extension to the Class Period and reiterating the April 10, 2020 deadline.  *See id.*, Ex. D.  Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before April 10, 2020.  Meitav filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

> **2.   Meitav Believes it Has the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the "largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, Meitav suffered significant losses of approximately ***$3,278,150.19*** on a LIFO basis.  *See* Federman Decl., Ex. B (Loss Analysis).  To the best of Meitav's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, Meitav has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

> **3.   Meitav Is a Sophisticated Institutional Investor That Satisfies the Requirements of Rule 23**

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of

Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) such claims are typical of those of the class; and (iv) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Duane & Virginia Lanier Trust v. Sandridge Energy, Inc.*, No. Civ-15-634-M, 2016 WL 1056653, at *2 (W.D. Okla. Mar. 16, 2016) (explaining that of the four requirements for class certification under Rule 23(a), "typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA"); *see also Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) (same).

In this case, Meitav satisfies both Rule 23 requirements.

### (i) Meitav Satisfies the Typicality Requirement of Rule 23

Pursuant to Rule 23(a)(3), typicality requires that "the claims or defenses of the class representative are typical of the claims or defenses of the other prospective class members." *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 651 (W.D. Okla. 2012). Typicality exists if claims "arise 'from the same event or course of conduct that gives rise to claims of the other class members and the claims are based on the same legal theory.'" *In re Williams Sec. Litig.*, No. 02-cv-72-H(M), 2002 WL 32153476, at *6 (N.D. Okla. July 8, 2002) (discussing the typicality requirement) (citations omitted); *see also Chesapeake Energy*, 281 F.R.D. at 652 (explaining that a class representative's claim is typical "when it arises out of the same event, practice, or course of conduct of the defendant, and is based on the same legal theory on which the class claims are predicated"). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Duane & Virginia Lanier Trust*, 2016

WL 1056653, at *3 ("Typicality does not require that every class member's claim be identical to those of the representative plaintiffs.").

The typicality requirement is satisfied here because Meitav, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members. Indeed, like all other members of the Class, Meitav: (i) purchased Spirit securities during the Class Period; (ii) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (iii) was damaged thereby. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

### (ii)    Meitav Satisfies the Adequacy Requirement of Rule 23

Meitav likewise satisfies the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The determination of adequacy revolves around two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Chesapeake Energy*, 281 F.R.D. at 652 (citation omitted); *see also Duane & Virginia Lanier Trust*, 2016 WL 1056653, at *3 (explaining that adequacy "is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action") (citation omitted).

Meitav will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Meitav's interests and those of the absent Class members; rather, the interests of Meitav and Class members are squarely aligned. Moreover, Meitav has further demonstrated its adequacy through the selection of Labaton Sucharow to serve as Lead Counsel

11

on behalf of the Class.  *See In re Williams*, 2002 WL 32153476, at *7 (explaining that the adequacy of representation inquiry involves a consideration of whether "class counsel is qualified, experienced and generally able to conduct the litigation") (citation omitted).  As discussed more fully below, Labaton Sucharow is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute securities class action lawsuits vigorously and efficiently.  Finally, because of Meitav's substantial financial stake in the litigation, Class members can be assured that Meitav has the incentive to vigorously represent the Class' interests.  *See, e.g.*, *Lipetz v. Wachovia Corp.*, No. 08-Civ-6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting institutional investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class).

In sum, Meitav, having suffered the largest financial interest and satisfying both the typicality and adequacy requirements of Rule 23, should be appointed as Lead Plaintiff of the Class.

### 4.      Meitav Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, Meitav—a large, sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Congress reasoned that increasing the involvement of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be

beneficial because such investors are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See, e.g., Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *Martin v. Atchison Casting Corp.*, 200 F.R.D. 453, 456 (D. Kan. 2001) ("The legislative history of the [PSLRA] is replete with statements of Congress' desire to put control of such litigation in the hands of large, sophisticated institutional investors.") (citations omitted).

For these reasons, Meitav is precisely the type of lead plaintiff envisioned by the PSLRA.

## III. MEITAV'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Meitav has selected Labaton Sucharow to serve as Lead Counsel for the Class. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, secured a $473 million recovery in

*In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-0397 (D.N.J.), and

secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, &*

*ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.).  Labaton Sucharow presently serves as lead or

co-lead counsel in several significant investor class actions.  *See* Labaton Sucharow Firm

Resume, Federman Decl., Ex. E.

 Likewise, the law firm of Federman & Sherwood, proposed Liaison Counsel for the

Class, is well qualified to represent the Class as Liaison Counsel.  Federman & Sherwood

maintains an office in Oklahoma, and has substantial litigation experience.  *See* Federman &

Sherwood Firm Resume, Federman Decl., Ex. F.  Thus, the firm is well qualified to represent the

Class as Liaison Counsel.  *See* ANN. MANUAL COMPLEX LIT. § 10.221 (4th ed. 2004) (discussing

role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same

locality as the court.").

 Thus, the Court may be assured that by granting this motion, the Class will receive the

highest caliber of legal representation.

**CONCLUSION**

 For all of the foregoing reasons, Meitav respectfully requests that the Court: (i)

consolidate the Action; (ii) appoint Meitav as Lead Plaintiff for the Class pursuant to the

PSLRA; and (iii) approve its selection of Labaton Sucharow as Lead Counsel and Federman &

Sherwood as Liaison Counsel for the Class.

Dated:  April 10, 2020       Respectfully submitted,

                 */s/ William B. Federman*
                 William B. Federman (OBA # 2853)
                 **FEDERMAN & SHERWOOD**
                 10205 N. Pennsylvania Ave.
                 Oklahoma City, Oklahoma 73120
                 Telephone: (405) 235-1560
                 Facsimile: (405) 239-2112

wbf@federmanlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
David J. Schwartz
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Counsel for Proposed Lead Plaintiff Meitav
Dash Provident Funds and Pension Ltd. and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, William B. Federman, hereby certify that the Memorandum of Law in Support of the Motion of Meitav Dash Provident Funds and Pension Ltd. for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  April 10, 2020

*/s/  William B. Federman*
William B. Federman